UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| JASON FERRELL, Petitioner, | ) ) ) ) | |
| v. | ) ) | C.A. No. 10-244-M |
| ASHBEL T. WALL, Respondent. | ) ) ) ) | |

## MEMORANDUM AND ORDER

JOHN J. McCONNELL, JR., United States District Judge.

This is this Court's second Memorandum and Order concerning Jason Ferrell's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition). *See Ferrell v. Wall*, 862 F. Supp. 2d 88 (D.R.I. 2012) (*Ferrell Federal*). In his Petition, Mr. Ferrell set forth nine grounds for relief. (ECF No. 1.)[1] This Court dismissed six of those grounds in response to the State's Motion to Dismiss. (ECF Nos. 10, 23.) Mr. Ferrell's three remaining grounds assert the following: *ground one*, the state trial court's improper limitation of a defense alibi witness' testimony violated Mr. Ferrell's Sixth Amendment compulsory process rights; *ground two*, the insufficient evidence to support Mr. Ferrell's two conspiracy convictions violated his due process rights; and *ground three*, Mr. Ferrell's consecutive sentences on the two conspiracy counts violated the Fifth Amendment's prohibition against double jeopardy. (*See* ECF No. 1 at 5-10; ECF No. 23 at 1, 12-33, 46; ECF No. 24.) This Court heard oral argument twice, studied the parties' submissions, read the voluminous state court papers, reviewed the trial transcript, and conducted extensive legal research. For the reasons explained below,

---

[1] To maintain consistent references, the page numbers in documents appearing in the Case Management/Electronic Case Filing (CM/ECF) system refer to the CM/ECF page as opposed to the pagination in the original document.

Mr. Ferrell's Petition is GRANTED as to ground one, GRANTED as to ground two, and DENIED AS MOOT as to ground three.

## I. BACKGROUND

This Court's May 2012 decision, *Ferrell Federal*, contains the lengthy and complex procedural history of Mr. Ferrell's claims, as well as a more comprehensive discussion of the facts regarding the underlying crimes. (ECF No. 23.) As in this Court's prior decision, the facts are as described in the R.I. Supreme Court opinion affirming Mr. Ferrell's conviction, *State v. Oliveira*, 774 A.2d 893, 900-03 (R.I. 2001), and "supplemented with other record facts consistent with the [R.I. Supreme Court's] findings." *Shuman v. Spencer*, 636 F.3d 24, 27 (1st Cir. 2011) (quoting *Yeboah-Sefah v. Ficco*, 556 F.3d 53, 62 (1st Cir. 2009)).

On December 18, 1995, on the West Side of Providence, Rhode Island, John Carpenter and Lorenzo Evans were traveling in a blue Chevrolet. Three men in a black Jeep chased them and then shot at them. Mr. Carpenter was killed, while Mr. Evans fled. Mr. Evans ran through yards to a nearby house, banged on its door, and then ran to the side of the house. From that vantage point, he looked out to the street and saw a white Ford with two men in it, and the one in the driver's seat was holding a "chrome object." Although unable to identify any of the assailants when he was at the police station that day, Mr. Evans later identified the three men in the Jeep as Pedro Sanders, Gahil Oliveira, and Robert McKinney, and the two men in the Ford as Mr. Ferrell and Jermaine Campbell.[2]

All five men identified by Mr. Evans were charged with four crimes: (i) first-degree murder of Mr. Carpenter; (ii) conspiracy to murder Mr. Carpenter; (iii) assault with intent to murder Mr. Evans; and (iv) conspiracy to assault with intent to murder Mr. Evans. *See Oliveira*,

---

[2] Mr. Evans later recanted his identification of Mr. Ferrell, but that issue no longer is before this Court. *See Ferrell Federal*, 862 F. Supp. 2d at 118-19.

2

774 A.2d at 902. Their trial occurred in the R.I. Superior Court in March and April of 1997. *Id.* Mr. Ferrell was tried together with Messrs. Oliveira, Sanders, and Campbell. *Id.* Mr. McKinney was tried at the same time, before the same trial justice, but by a different jury. *Id.* at n.4.

Mr. Ferrell was acquitted of murder, but convicted of assault with intent to murder and both conspiracies. *Id.* at 903. He was sentenced to an aggregate term of forty years of imprisonment, twenty years for the assault with intent to murder and ten years for each of the two conspiracies, with the sentences running consecutively. *See Ferrell v. Wall,* 889 A.2d 177, 182 (R.I. 2005) (*Ferrell 2005*); R.I. Super. Ct. Crim. Dkt. Sheet Rep., Case ID P1-1196-1547B.

On June 4, 2010, Mr. Ferrell, pro se, filed a Petition in this Court containing nine grounds for relief. (ECF No. 1.) He also filed a Motion to Appoint Counsel. (ECF No. 4.) The Magistrate Judge found that "this is one of the rare § 2254 cases where the appointment of counsel is warranted" and appointed counsel for Mr. Ferrell. (ECF No. 5 at 3.)

The State responded to the Petition by filing a Motion to Dismiss.[3] (ECF No. 10.) The predominant focus of that motion was timeliness. This Court heard argument on the Motion to Dismiss, with Mr. Ferrell present, and then issued a Memorandum and Order dismissing grounds four through nine of the Petition and finding that grounds one through three survived the motion. *See Ferrell Federal,* 862 F. Supp. 2d at 120. A week later, this Court issued an Order setting forth a briefing schedule for the Petition's remaining three grounds. (ECF No. 24.)

In response to that Order, the state trial transcript was submitted and the parties filed supplemental briefs and exhibits. (*See* ECF Nos. 29, 30, 32, 34.) On December 17, 2012, this Court heard argument with Mr. Ferrell in attendance.

---

[3] The State requested that this Court await the U.S. Supreme Court's decision in the case of *Wall v. Kholi*, No. 09-868. *Id.* at 6-8. *Kholi* was decided on March 7, 2011, and under its holding Mr. Ferrell's Petition was timely. *See Wall v. Kholi*, 562 U.S.—, 131 S.Ct. 1278 (2011); *Ferrell Federal*, 862 F. Supp. 2d at 98-99.

## II.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, restricts federal court review of state court convictions and sentences. Before a federal court can reach the merits of a habeas claim, the petitioner "must have fairly presented his claims to the state courts and must have exhausted his state court remedies." *McCambridge v. Hall*, 303 F.3d 24, 34 (1st Cir. 2002) (citing 28 U.S.C. § 2254(b)(1)(A)).

When a federal court reaches the merits of a habeas claim, the applicable standard of review depends on whether the state court adjudicated the petitioner's claim on the merits. *See, e.g.*, *Healy v. Spencer*, 453 F.3d 21, 25 (1st Cir. 2006). Where a claim "was adjudicated on the merits in State court proceedings," a federal court may grant habeas relief only if the State court's "adjudication of the claim" either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Where the state court did not adjudicate the petitioner's claim on the merits, the federal court's review of that claim is de novo. *Norton v. Spencer*, 351 F.3d 1, 5 (1st Cir. 2003). Factual determinations made by the state court are presumed to be correct, with the petitioner bearing "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III.   GROUND ONE

The Sixth Amendment's Compulsory Process Clause guarantees criminal defendants "compulsory process for obtaining witnesses in [their] favor." U.S. Const. Amend. VI.[4]  In ground one of the Petition, Mr. Ferrell asserts that his Sixth Amendment right to compulsory process was violated by the state trial court's refusal to permit his alibi witness Debra Baptista to testify about her contact with him after 11:15 a.m. on the day of the shooting.[5]

The trial court found that Mr. Ferrell's counsel's failure to disclose pre-trial that Debra Baptista had contact with Mr. Ferrell after 11:15 a.m. was "a clear and unequivocal Rule 16 violation for which [his counsel had] no explanation." Tr. at 2065.[6] Mr. Ferrell argues that Debra Baptista's testimony regarding his whereabouts after 11:15 a.m. is crucial because she would have told the jury that Mr. Ferrell returned to her home "somewhere around quarter past 11:00" and remained there until "around 11:30, 11:35" thus negating the State's assertion that he was present near the scene of the crime across town. *Id.* at 2064. Mr. Ferrell contends that if the excluded testimony was believed by the jury, it "would have demanded acquittal." (ECF No. 34 at 2.)

The pertinent time period for Mr. Ferrell's alibi hinges not only on the time of the shooting, but also on the travel time between the shooting and the locations where Mr. Ferrell was seen by his alibi witnesses. The crimes occurred on the West Side of Providence, while Mr. Ferrell's alibi witnesses saw him on the East Side of Providence. *See Ferrell Federal*, 862

---

[4]   The Sixth Amendment is applicable to the states through the Fourteenth Amendment. *See Washington v. Texas*, 388 U.S. 14, 17-19 (1967).
[5]   At the Motion to Dismiss argument, the State conceded that ground one was not amenable to summary dismissal and asked that it be allowed to provide further briefing. This Court therefore denied as moot the State's Motion to Dismiss with respect to ground one and ordered further briefing. *See Ferrell Federal*, 862 F. Supp. 2d at 101.
[6]   To maintain consistent references, citations to the trial transcript refer to the page number appearing in the top right corner of the page.

F. Supp. 2d at 100 n.15. If a jury believed Debra Baptista's testimony that Mr. Ferrell was at her East Side home from 11:15 a.m. to 11:30 or 11:35 a.m., then Mr. Ferrell asserts that he could not have been present on the West Side when Mr. Carpenter was shot and could not have been sighted on the West Side shortly after that shooting.

### A.    R.I. Superior Court

Before trial, the State represented that the "Time of Offense" was "Approximately 11:30 am," as well as "On or about 11:22 am." (ECF No. 34-1 at 11, 19). At trial, the State's medical examiner testified that Mr. Carpenter was pronounced dead at 11:27 a.m. Tr. at 837, 890. Also at trial, the State called a detective in the Providence Police who testified that it takes between eight and nine minutes to drive from Providence's West Side to its East Side. *Id.* at 1799, 1808-12.

At trial, Debra Baptista testified that on December 18, 1995, Mr. Ferrell came to her home between 10:45 a.m. and 11:00 a.m. *Id.* at 2053. She said that Mr. Ferrell remained at the Baptista home "about fifteen to twenty minutes," and then he left, departing between 11:10 a.m. and 11:15 a.m. *Id.* at 2054. When Debra Baptista was asked if Mr. Ferrell returned to her home after that departure, she responded "Yes," as she "had beeped" Mr. Ferrell. *Id.* at 2054-55. When she was asked about the time that elapsed between Mr. Ferrell's departure and when she beeped him, the State objected and its objection was sustained. *Id.* at 2055. Debra Baptista was then asked if she recalled the time that she beeped Mr. Ferrell. *Id.* The State objected again and specified that its objection was premised on Rule 16. *Id.* The trial court sustained the objection and called counsel to sidebar. *Id.*

At sidebar, the trial court asked Mr. Ferrell's counsel, Joseph A. Bevilacqua, Jr.,[7] for the "statement" he had provided pre-trial to the prosecutor regarding Debra Baptista's testimony. *Id.* Mr. Bevilacqua explained that he did not have a "statement" from Debra Baptista. *Id.* Then the trial court asked Mr. Bevilacqua what he had in his hand, and he responded that he had a document containing the information that Debra Baptista "told the investigator" and then he specified that it was in question and answer format. *Id.* at 2056. Mr. Bevilacqua further explained that he had not provided the question and answer document to the State, but he had provided a summary to the State. *Id.*

The State explained to the trial court that during pre-trial Mr. Ferrell's counsel's initial response to discovery was inadequate, so it moved to compel more responsive answers. *Id.* In response to the State's motion to compel, Mr. Bevilacqua provided a one page document containing a summary of Debra Baptista's testimony. *Id.*; *id.* at 2059. (*See also* ECF No. 34-1 at 15-18.) After a brief conversation about another witness, the trial court stated that she was "going to preclude any further examination about beeps and when she saw him again or anything" because Mr. Bevilacqua "didn't disclose it." *Id.* at 2056.

Mr. Bevilacqua objected, and raised the issue of Mr. Ferrell's Sixth Amendment rights: "The Sixth Amendment right of confrontation is more important [than a] Rule 16 violation if, in

---

[7] While Mr. Ferrell's Petition contained several grounds of ineffective assistance of counsel, those issues are no longer before this Court, largely due to procedural infirmities. *See Ferrell Federal*, 862 F. Supp. 2d at 114-18. Furthermore, Mr. Bevilacqua is no longer practicing law. On May 20, 2005, the R.I. Supreme Court disbarred him. *In re Bevilacqua*, 874 A.2d 1294 (2005). On that same date, Mr. Bevilacqua pled guilty in this Court to perjury and criminal contempt. (1:05-cr-00056-ML-LDA-1.) He was sentenced to 18 months of imprisonment. (1:05-cr-00056-ML-LDA-1, ECF No. 19.) On June 6, 2008, Mr. Bevilacqua pled guilty to conspiracy to obstruct justice in U.S. District Court for the District of Massachusetts. (1:07-cr-10008-NMG-2, ECF No. 155.) He was sentenced to 21 months of imprisonment. (1:07-cr-10008-NMG-2, ECF No. 182.) On November 18, 2008, in response to the judgment in the District of Massachusetts, this Court disbarred Mr. Bevilacqua. (1:08-mc-0091-ML-DLM.)

fact, there is a violation . . . Sixth Amendment right to present witnesses, I stand corrected.  I think that's tantamount --."  *Id.* at 2057.  The trial court appears to have interrupted Mr. Ferrell's counsel, asking why he had not disclosed the full extent of the testimony to the State.  *Id.* Mr. Ferrell's counsel responded that he thought Mr. DiLibero[8] had handled it.  *Id.*

The jury was sent out and Debra Baptista stepped down from the witness stand.  *Id.* at 2058.  The prosecutor said that he was "outraged" that Mr. Bevilacqua had not provided the question and answer document.  *Id.* at 2059.  The trial court had the question and answer document marked as an exhibit, and, in light of attorney-client privilege concerns, sealed.  *Id.* at 2057-58, 2059.[9]  Then the trial court stated:

> If the Supreme Court needs to review that in terms of the defendant's obligations under Rule 16 and the outrageous suggestion you made at the side bar that somehow the defendant's Sixth Amendment right to present witnesses overcomes your obligation to comply with Rule 16.  The Supreme Court may want to review that.

*Id.* at 2059-60.  Mr. Ferrell's counsel immediately asked to put something on the record, and the trial court indicated that she had not made a decision so she would hear him.  *Id.* at 2060. Mr. Bevilacqua pointed out that Debra Baptista met with the prosecutor "and the Providence Police on many occasions" and the State knew that she was an alibi witness.  *Id.* at 2060-62.  The trial court ruled that it would not "permit any further evidence beyond what [Mr. Ferrell's counsel] disclosed with respect to alibi."  *Id.* at 2062.[10]

---

[8]  According to Mr. Ferrell's trial counsel, Mr. DiLibero was his "associate."  (ECF No. 34-1 at 4.)

[9]  The question and answer document filed with this Court states that it was prepared in January of 1996.  (ECF No. 34-1 at 7-9.)  The questions and answers indicate that after 11:15 a.m., Debra Baptista beeped Mr. Ferrell and he returned to the Baptista home.  *Id.* at 8.

[10]  When the State asked to review the question and answer document, the trial court did not allow it because the document "may very well impact on the attorney/client privilege."  *Id.* at 2063.

Next, Mr. Bevilacqua conducted a short voir dire of Debra Baptista. *Id.* at 2063-65. When asked if she saw Mr. Ferrell again after 11:00 a.m. on September 18, 1995, Debra Baptista testified that he returned to her home "somewhere around quarter past 11:00" and remained there until "around 11:30, 11:35." *Id.* at 2064.

After the voir dire, the trial court reviewed the answer provided in discovery —"that Debra Baptista will testify that she saw and spoke to [Mr. Ferrell] between 10:45 and 11:15 a.m."— and ruled that Mr. Ferrell's counsel was "precluded from going beyond 11:15." *Id.* at 2065. Then the trial court explained that Mr. Ferrell's counsel could retrace his steps only "[u]ntil 11:15, but you are not going to be able to go beyond 11:15, the second point she saw him that day. You failed to disclose it, period." *Id.* at 2066. The trial court did not make a finding that the failure to disclose the full extent of Debra Baptista's contact with Mr. Ferrell was willful or intentional.

At trial, Mr. Ferrell presented other alibi testimony. Nicholas DiScullio testified that shortly after 11:00 a.m. on December 18, 1995, he was traveling down North Main Street (on Providence's East Side) when he encountered Mr. Ferrell traveling in the opposite direction. Tr. at 2029-31. Mr. DiScullio testified that he conversed with Mr. Ferrell in front of a gas station on North Main Street for about fifteen or ten minutes and it was approximately 11:15 a.m. *Id.* at 2031, 2032.

After Debra Baptista testified, her sister Diane Baptista also provided alibi testimony. *Id.* at 2078-82; *see also id.* at 2053. Diane Baptista testified that on December 18, 1995, Mr. Ferrell arrived at the Baptista home when she was getting ready to take her mother to dialysis. *Id.* at 2079-80. Diane Baptista stated that Mr. Ferrell arrived between 10:40 a.m. and 10:50 a.m. *Id.*; *id.* at 2091. Diane Baptista explained that she remained at the home for about five minutes while

9

Mr. Ferrell was there, and then she left to take her mother to dialysis. *Id.* at 2080. After that, she picked up a little girl from school at 11:30 a.m. *Id.* When Diane Baptista returned home at about 11:45 a.m., Mr. Ferrell was there. *Id.* at 2081.

The only testimony concerning Mr. Ferrell's whereabouts between 11:15 a.m. and 11:45 a.m. was the excluded testimony from Debra Baptista. The crime occurred, according to the State's assertions, on or about 11:22 a.m., or approximately 11:30 a.m., or around 11:27 a.m. when the medical examiner said Mr. Carpenter was pronounced dead.

### B.   R.I. Supreme Court

The exclusion of Debra Baptista's post-11:15 a.m. testimony has been discussed by the R.I. Supreme Court in three published opinions. First, in 2001 in Mr. Ferrell's direct appeal, *State v. Oliveira*, the R.I. Supreme Court ruled that the trial court did not abuse its discretion by limiting Debra Baptista's testimony. 774 A.2d at 907-08. Although it was briefed, the R.I. Supreme Court did not address the Sixth Amendment. *Id.*; *see* Br. for Appellant at 51-54, *Oliveira*, 774 A.2d 893 (No. 99-0007), 2000 WL 34534010, at *51-*54. Instead, the R.I. Supreme Court analyzed whether the exclusion sanction was appropriate for a Rule 16 violation: "we note that Rule 16(i) provides for sanctions for noncompliance with the discovery rules, and that a trial justice must consider the four factors set forth in *Ricci* when dealing with nondisclosure." *Oliveira*, 774 A.2d at 908; *see also State v. Ricci*, 472 A.2d 291, 299 (R.I. 1984). The R.I. Supreme Court found that the trial court had not abused its discretion under state Rule 16 but did not address the Sixth Amendment claim. *Id.*

Second, in *Ferrell 2005*, the R.I. Supreme Court referenced the limitation on Debra Baptista's testimony and addressed a related issue. 889 A.2d at 181, 190-92. Regarding the limitation, the R.I. Supreme Court again noted that Debra Baptista had been excluded from

testifying about Mr. Ferrell's whereabouts after 11:15 a.m. *Id.* at 181.[11] On the related issue, the

R.I. Supreme Court reviewed Mr. Ferrell's claim of ineffective assistance of counsel premised on

his counsel's Rule 16 violation related to Debra Baptista's precluded alibi testimony. *Id.* at 190-

92.[12] Again, it did not address the Sixth Amendment claim. On the ineffective assistance claim,

R.I. Supreme Court reversed the Superior Court and held that the claim failed. *Id.* at 191.

Third, in 2009 the R.I. Supreme Court noted that Mr. Ferrell had raised a Sixth

Amendment claim, but it denied review due to *res judicata*. *Ferrell v. Wall*, 971 A.2d 615, 625-

26 (2009) (*Ferrell 2009*). The R.I. Supreme Court stated:

> [Mr. Ferrell] next asserts that the motion justice erred in not considering whether
> the partial exclusion of Debra Baptista's alibi evidence (evidence that arguably
> could have provided [Mr. Ferrell] with an alibi at the time of the crime)
> constituted a violation of his right to compulsory process. The motion justice
> determined that he was precluded from addressing this issue because it already
> had been decided in a previous appeal before this Court. We concur. In
> applicant's direct appeal, we specifically reviewed this issue and concluded that
> applicant suffered no constitutional prejudice as a result of [Debra] Baptista's
> excluded testimony. *See Ferrell III*, 889 A.2d at 191 (concluding that applicant
> "did not suffer constitutionally significant prejudice as a result of [Baptista's]
> excluded testimony"). The doctrine of *res judicata* bars relitigation on this issue;
> that doctrine foreclosed not only review by the motion justice, but further review
> by this Court as well. *See, e.g.*, *Carrozza*, 962 A.2d at 78; *Miguel*, 924 A.2d at 4-
> 5.

---

[11] In a footnote, the R.I. Supreme Court mentioned that in *Oliveira* it had "concluded that the
trial justice did not abuse her discretion in finding that defense counsel had violated Rule 16 of
the Superior Court Rules of Criminal Procedure, and thus affirmed her decision to limit Debra
[Baptista]'s testimony. *Id.* at n.2 (citing *Oliveira*, 774 A.2d at 908.)

[12] The R.I. Supreme Court noted that the R.I. Superior Court justice who heard Mr. Ferrell's
underlying post-conviction application deemed Debra Baptista's precluded testimony "critically
important" to Mr. Ferrell's case. *Id.* at 190. In its post-conviction application decision, the
Superior Court noted the "crucial import of [Debra] Baptista's testimony" and explained:
"While other alibi witnesses for Mr. Ferrell could place him within another section of the city
near the time of the . . . shooting, [Debra] Baptista's excluded testimony has him physically in
her presence on the East Side when Mr. Carpenter was shot on the other side of the city."
*Ferrell v. Wall*, No. PM-02-3635, 2005 WL 373479, at *9 (R.I. Super. Feb. 2, 2005) *rev'd*
*Ferrell 2005*, 889 A.2d at 192.

*Id.* (emphases added).  Although the R.I. Supreme Court stated that it had "specifically reviewed this issue" in Mr. Ferrell's "direct appeal," that is not the case.  In Mr. Ferrell's direct appeal, *Oliveira*, the R.I. Supreme Court did <u>not</u> address whether Mr. Ferrell's compulsory process rights were violated due to the exclusion of Debra Baptista's testimony; it relied only on Rule 16 of the R.I. Superior Court Rules of Criminal Procedure.  774 A.2d at 907-08.  The quoted statement is found at 889 A.2d 191 in the R.I. Supreme Court's 2005 decision reviewing a post-conviction application and pertains only to an ineffective assistance of counsel claim, not a Sixth Amendment Compulsory Process Clause claim.  Because it erroneously thought it already had analyzed whether the limitation of Debra Baptista's alibi testimony violated Mr. Ferrell's constitutional rights under the Compulsory Process Clause, the R.I. Supreme Court in 2009 incorrectly found that *res judicata* barred review.  *Ferrell 2009*, 971 A.2d at 625-26.

Consequently, the Rhode Island Supreme Court did not adjudicate on the merits Mr. Ferrell's claim that his Sixth Amendment Compulsory Process rights were violated when Debra Baptista was precluded from testifying about her contact with Mr. Ferrell after 11:15 a.m.

### C.    Standard of Review

Mr. Ferrell contends that this Court's review is de novo because the R.I. Supreme Court never addressed his Compulsory Process Clause claim.  (ECF No. 29 at 4.)  The State agrees that review is de novo "unless and until" the U.S. Supreme Court issues a contrary ruling in *Johnson v. Williams*, No. 11-465, a pending case argued on October 3, 2012.  (ECF No. 32 at 3-4.)  Since the R.I. Supreme Court did not address Mr. Ferrell's constitutional claim on the merits, under existing law review here is de novo.  *See Clements v. Clarke*, 592 F.3d 45, 52 (1st Cir. 2010)

(citing *Fortini v. Murphy*, 257 F.3d 39, 47 (1st Cir. 2001)); *see also DiBenedetto v. Hall*, 272 F.3d 1, 6-7 (1st Cir. 2001).

### D.   Compulsory Process Clause Rights in Habeas Action

In *Taylor v. Illinois*, the U.S. Supreme Court stated: "Few rights are more fundamental than that of an accused to present witnesses in his own defense, . . . . Indeed, this right is an essential attribute of the adversary system itself." 484 U.S. 400, 408 (1988) (internal citation omitted). A defendant's exercise of his Sixth Amendment constitutional right to compulsory process "assists the adversary process in its truth-seeking function by ensuring that the trial court hears the full array of admissible facts pertinent to the case." *Bowling v. Vose*, 3 F.3d 559, 561 (1st Cir. 1993), *cert. denied*, 510 U.S. 1185 (1994). A "defendant's right to compulsory process is itself designed to vindicate the principle that the 'ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts.'" *Taylor*, 484 U.S. at 411 (quoting *United States v. Nixon*, 418 U.S. 683, 709 (1974)).

"Although this right is fundamental, it is not absolute, and must be weighed against countervailing public interests." *United States v. Levy-Cordero*, 67 F.3d 1002, 1012-13 (1st Cir. 1995). The U.S. Supreme Court in *Taylor* describes the factors to consider: "the 'integrity of the adversary process, which depends both [on] the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process.'" *Id.* at 1013 (quoting *Taylor*, 484 U.S. at 414-15). The First Circuit has instructed judges to "also factor into the mix the nature of the explanation given for the party's failure reasonably to abide by the discovery request, the willfulness vel non of the violation, the relative simplicity of compliance, and whether or not some unfair tactical advantage has been sought." *United States v. Nelson-*

*Rodriguez*, 319 F.3d 12, 36 (1st Cir. 2003) (quoting *Chappee v. Vose*, 843 F.2d 25, 29 (1st Cir. 1988)). For example, if "counsel's delay in providing timely notice of an alibi defense 'was willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence,'" then "exclusion is 'entirely consistent' with the purposes of the Compulsory Process Clause." *Levy-Cordero*, 67 F.3d at 1013 (quoting *Taylor*, 484 U.S. at 415).

In the habeas context, even if a defendant's constitutional rights were violated, "that error must have been sufficiently prejudicial to defendant's rights to warrant habeas relief." *Bowling*, 3 F.3d at 562. The standard applicable for determining whether habeas relief must be granted is the *Kotteakos* harmless-error standard: whether the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). "Assessments of harmless error are necessarily context-specific." *Levasseur v. Pepe*, 70 F.3d 187, 193 (1st Cir. 1995) (citing *Kotteakos*, 328 U.S. at 762). As the U.S. Supreme Court explained in *O'Neal v. McAninch*: "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless. And, the petitioner must win." 513 U.S. 432, 436 (1995). And the U.S. Supreme Court specified that the term "grave doubt" means "that, in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Id.* at 435.

### E. Analysis

This Court first must determine whether Mr. Ferrell's Sixth Amendment Compulsory Process Clause rights were violated. If so, then it must determine whether that error was

14

harmless. Habeas relief will be granted only if Mr. Ferrell's constitutional rights were violated and that error was not harmless.

### 1. Compulsory Process Clause

Mr. Ferrell argues that the excluded evidence was critical to his defense as no other alibi witness testified about his whereabouts during that crucial time period. (ECF No. 29 at 10-14; ECF No. 34 at 2-5.) Mr. Ferrell distinguishes his case from cases where witness exclusions were not unconstitutional, and he emphasizes that the failure to disclose the full extent of Debra Baptista's testimony was not willful. *Id.* The State focuses on Mr. Ferrell's trial counsel's failure to supplement his discovery response when he had the question and answer document for over a year before trial and his lack of a "good evidentiary-backed reason" for this discovery failure. (ECF No. 32 at 5-7.)

This Court will first evaluate the factors set forth in *Taylor* by the U.S. Supreme Court, and then turn to the factors enumerated by the First Circuit in *Nelson-Rodriguez*. As *Taylor* explains, "The integrity of the adversary process" depends "on the presentation of reliable evidence and the rejection of unreliable evidence." 484 U.S. at 414-15. Although Debra Baptista's testimony was not properly disclosed in discovery, there is no evidence or even an inference that her excluded testimony was unreliable or fabricated. *Cf. Bowling*, 3 F.3d at 561 (noting in *Taylor* there was an inference that "witnesses [were] being found that really weren't there"). In fact, Debra Baptista's voir dire statements are consistent with the question and answer document prepared more than a year prior by the investigator. *See id.* at 562 ("proposed testimony does not threaten to pollute the trial with unreliable evidence; it corroborates a written statement"). Furthermore, at the time Debra Baptista spoke with the investigator, the State had not specified the exact time of the crime, so she could not have fabricated an alibi to conform to

the State's disclosure. (ECF No. 34 at 7.)[13] This Court finds that the limitation on Debra Baptista's testimony eliminated the presentation of reliable testimony; the state court did not reject unreliable testimony.

*Taylor* further explains that "The integrity of the adversary process" also depends on "the interest in the fair and efficient administration of justice." 484 U.S. at 414-15. Even though the State was well acquainted with Debra Baptista because Mr. Ferrell's counsel disclosed her as an alibi witness and the State interviewed her several times, the State alleges surprise by her post-11:15 a.m. testimony. A short continuance would have been in the best interest of justice: it would have provided the State with time to further question Debra Baptista about her post-11:15 a.m. contact, to prepare to cross-examine her, and, if desired, to adjust its trial strategy regarding that timeframe. As in *Bowling*, "the proposed testimony was not particularly scientific or technical in nature," so it would not "have imposed a hardship on the government in preparing a cross-examination on short notice." 3 F.3d at 562.

Finally, *Taylor* instructs courts to weigh "the potential prejudice to the truth-determining function of the trial process." 484 U.S. at 414-15. Here, the exclusion of relevant and reliable alibi evidence from a disclosed witness "would distort the truth-seeking function of trial." *Bowling*, 3 F.3d at 562. And as this Court previously pointed out, the only testimony concerning

---

[13] Mr. Ferrell also points out that Debra Baptista's testimony is consistent with the report of Providence Police Officer Debra Silva-Rocha indicating that she saw Mr. Ferrell on the East Side in a white car "several minutes" after 11:22 a.m. (ECF No. 34 at 6-7.) *See also* Tr. at 1587; 1597-98. However, when Officer Silva-Rocha testified at trial, over a year after she wrote the report, she testified that she saw Mr. Ferrell about thirteen minutes after 11:22 a.m. *See, e.g.,* Tr. at 1574, 1608. Mr. Ferrell further points out that Officer Silva-Rocha's report regarding seeing Mr. Ferrell on the East Side is consistent with Debra Baptista's statement to the investigator, recorded in the question and answer document, that Mr. Ferrell told her that "there was a cop right behind him" shortly before he returned to her home. (ECF No. 34 at 6; ECF No. 34-1 at 8.)

Mr. Ferrell's whereabouts between 11:15 a.m. and 11:45 a.m. — the crucial time period — was the excluded testimony from Debra Baptista.

Moving to the *Nelson-Rodriguez* factors, this Court looks to "the nature of the explanation given for the party's failure reasonably to abide by the discovery request, the willfulness vel non of the violation, the relative simplicity of compliance, and whether or not some unfair tactical advantage has been sought." 319 F.3d at 36. Mr. Bevilacqua explained that he thought his associate had disclosed the later-in-time testimony. There is no evidence and there were no findings indicating that the incomplete disclosure was willful. Mr. Bevilacqua appears at worst to have been sloppy or negligent, and perhaps failed to supervise his associate. Nothing in the record or presentation by counsel suggests that Mr. Bevilacqua intentionally withheld Debra Baptista's beeping of Mr. Ferrell and his return to her home around 11:15 a.m. While compliance with Rule 16 would have been simple and appropriate, there is no evidence that Mr. Bevilacqua sought a tactical advantage.

In this case with these facts, this Court finds that Mr. Ferrell's Sixth Amendment right to present witnesses in his defense certainly outweighs the "countervailing public interests." *Levy-Cordero*, 67 F.3d at 1013. Here, like in *Bowling*, "it is obvious that concerns related to the integrity of the trial process do not weigh in favor of exclusion." 3 F.3d at 562 (finding defendant's Sixth Amendment rights were violated where alibi testimony was excluded in R.I. Superior Court trial due to a Rule 16 violation). "Given the important nature of the proposed testimony to [Mr. Ferrell], and the nonwillful character of the offense, [this Court finds] that concerns over fairness and efficiency are not sufficiently weighty to justify the denial of [Mr. Ferrell's] Sixth Amendment rights." *Id.* With the length of the trial, the number of defendants, and the two juries, the trial court no doubt was exasperated when it learned that Mr. Ferrell's

17

counsel had not disclosed the full extent of Debra Baptista's testimony. However, this Court's consideration of the factors set forth by the U.S. Supreme Court in *Taylor* and articulated by the First Circuit in *Nelson-Rodriguez* establishes that Mr. Ferrell's Sixth Amendment Compulsory Process Clause rights were violated by the exclusion of the exculpatory alibi testimony of Debra Baptista. "Furthermore, this Court is mindful of the First Circuit's statement in *Levy-Cordero*: "Exclusion of potentially exculpatory alibi evidence is the most severe of discovery sanctions." 67 F.3d at 1015. As stated and reiterated by the U.S. Supreme Court, sanctions other than preclusion are "'adequate and appropriate in most cases.'" *Michigan v. Lucas*, 500 U.S. 145, 152 (1991) (quoting *Taylor*, 484 U.S. at 413). No other non-preclusion sanction was imposed or appears even to have been contemplated by the trial court. This is one of those cases where a sanction other than preclusion would have been "adequate and appropriate" in order to uphold Mr. Ferrell's Sixth Amendment rights.

### 2. Harmless Error

The State contends that if the exclusion of Debra Baptista's post-11:15 a.m. testimony were constitutional error, then it was harmless. (ECF No. 32 at 7-9.) The State points to other alibi testimony and argues that the jury did not believe that testimony, so the precluded testimony could not have had a "substantial or injurious effect or influence in determining the jury's verdict." *Id.* Mr. Ferrell disagrees and focuses on the critical timeframe at issue — the few minutes immediately following the shooting of Mr. Carpenter — the time when Mr. Evans claims to have seen Mr. Ferrell in a white Ford near the location where Mr. Carpenter was shot. (ECF No. 34 at 5-9). *See Oliveira*, 774 A.2d at 901. Mr. Ferrell emphasizes that the excluded testimony is the only testimony pertaining to his whereabouts at that critical time. (ECF No. 34 at 8-9.)

18

To ascertain whether the violation of Mr. Ferrell's Compulsory Process Clause rights "had substantial or injurious effect or influence in determining the jury's verdict," this Court must determine "the exact nature and force of [Debra Baptista's] proposed testimony and" make "an effort to place her testimony within the context of the evidence as a whole. In short, the weight of her testimony must be balanced against the weight of the inculpatory evidence in this case . . . ." *Bowling*, 3 F.3d at 562-63 (internal quotation marks and citation omitted). Moreover, in evaluating whether other Sixth Amendment constitutional errors were harmless for habeas purposes, the First Circuit deemed the following factors relevant: "(1) the extent to which the error permeated the proceeding, (2) the centrality of the issue affected by the error to the case as actually tried and (3) the relative strength of the properly admitted evidence of guilt." *Levasseur*, 70 F.3d at 193 (analyzing whether Sixth Amendment Confrontation Clause violation caused by admission of inadmissible hearsay evidence was harmless under *Brecht* and *Kotteakos*); *see also Pettiway v. Vose*, 100 F.3d 198, 200-01 (1st Cir. 1996) (applying *Levasseur* factors to determine whether Sixth Amendment Confrontation Clause violation caused by limiting defendant's cross-examination was harmless under *Brecht* and *Kotteakos*). This Court will analyze the limitation on Debra Baptista's testimony under both the standard articulated in *Bowling* and the factors enumerated in *Levasseur*.

As *Bowling* directs, this Court looks to the "nature and force" of the excluded testimony, and places it "within the context of the evidence as a whole," balancing it "against the weight of the inculpatory evidence." 3 F.3d at 563. This Court agrees with Mr. Ferrell that Debra Baptista's excluded alibi testimony placed Mr. Ferrell on the East Side of Providence at the time of, or shortly after, the death of Mr. Carpenter on the West Side. (ECF No. 34 at 8, 9.) Further, this Court is unpersuaded by the State's argument that the jury must not have believed the

19

admitted alibi testimony.   Looking at "the evidence as a whole," no other alibi testimony accounted for his whereabouts at that particular time — the critical time for Mr. Ferrell to have an alibi.[14]  Moreover, the State's focus at trial on the time of Mr. Carpenter's death and the travel time across the city buttresses the vital importance of the excluded testimony.

As to the incriminating evidence, Mr. Evans was "the lone eyewitness placing [Mr. Ferrell] near the scene of the crime." *Ferrell 2005*, 889 A.2d at 182.  "It was [Mr.] Evans's identifications and parallel trial testimony that would serve as the basis for [Mr. Ferrell's] indictment and subsequent conviction." *Id.* at 181.  A balancing of the excluded testimony and the inculpatory evidence places this Court "in grave doubt about whether" the excluded alibi testimony "had substantial and injurious effect or influence in determining the jury's verdict." *O'Neal*, 513 U.S. at 436 (internal quotation marks omitted).  This Court finds, after a thorough review of the entire record, that the excluded testimony was not harmless.[15]

Turing to the *Levasseur* factors, the trial court's error did not permeate the proceedings to a great extent as the error limited the testimony of one witness.  70 F.3d at 193.  However, the erroneously excluded testimony impacted the most significant issue at Mr. Ferrell's trial:  the excluded alibi evidence eliminated the possibility that Mr. Ferrell was near the scene of the shooting when it happened or shortly afterwards.  The erroneously excluded testimony directly contradicted the "lone eyewitness" that put Mr. Ferrell near the crime at the relevant time. *Ferrell 2005*, 889 A.2d at 182.  Focusing, finally, on the relative strength of the evidence of

---

[14] After a comprehensive review of the trial transcript, this Court further finds that there is clear and convincing evidence demonstrating that the R.I. Supreme Court erred when it determined, in the context of analyzing an ineffective assistance of counsel claim, that Debra Baptista's excluded testimony was "cumulative."  (ECF No. 32 at 9.)  *See Ferrell 2005*, 889 A.2d at 191.

[15]  This Court agrees with the finding of R.I. Superior Court justice who heard Mr. Ferrell's post-conviction application deeming Debra Baptista's precluded testimony "critically important" to Mr. Ferrell's case.  *See Ferrell 2005*, 889 A.2d at 190.

guilt, Mr. Evans was the only eyewitness placing Mr. Ferrell at the scene and Mr. Evans's identification was the "basis" for Mr. Ferrell's conviction. Although there was additional circumstantial evidence, the "strength of the properly admitted evidence of guilt" was weak at best. *Levasseur*, 70 F.3d at 193. This Court's review of the *Levasseur* factors establishes that the erroneous limitation on Debra Baptista's testimony had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623 (quoting *Kotteakos*, 328 U.S. at 776).

After applying the harmless error standard set forth by the U.S. Supreme Court in *Brecht* and *Kotteakos*, and articulated by the First Circuit in *Bowling* and *Levasseur*, this Court is compelled to conclude that the limitation on Debra Baptista's testimony was an error "sufficiently prejudicial to [Mr. Ferrell's] rights to warrant habeas relief." *Bowling*, 3 F.3d at 562.

### F.    Conclusion

After de novo review, this Court finds that Mr. Ferrell's Sixth Amendment Compulsory Process Clause rights were violated and that constitutional error was not harmless. Ground one of the Petition is therefore GRANTED.

### IV.    GROUNDS TWO AND THREE

In ground two, Mr. Ferrell claims that his Fifth and Fourteenth Amendment rights to due process were violated because there was insufficient evidence to support his two conspiracy convictions. In ground three, Mr. Ferrell maintains that the Fifth Amendment's Double Jeopardy Clause prohibits his two punishments for conspiracy because they are "multiple punishments for the same offense." *Jackson v. Coalter*, 337 F.3d 74, 81 (1st Cir. 2003) (quoting *United States v. Ortiz-Alarcon*, 917 F.2d 651, 653 (1st Cir. 1990)).

In the State's briefing regarding ground two, it concedes that there was not sufficient evidence to support Mr. Ferrell's two separate conspiracy convictions. (ECF No. 32 at 10-11.) Mr. Ferrell agrees, as does this Court. Consequently, ground two of Mr. Ferrell's Petition is GRANTED. In light of this, Mr. Ferrell and the State agree that ground three of the Petition, also pertaining to the two conspiracies, is moot. This Court concurs. Ground three of Mr. Ferrell's Petition therefore is DENIED as MOOT.

Because the parties are in agreement regarding mootness, they did not fully brief ground three. This Court already determined that Mr. Ferrell had preserved his ground three double jeopardy sentencing claim. *See Ferrell Federal*, 862 F. Supp. 2d at 103-12. The merits of that claim are not reached here due to the aforementioned ruling on ground two. Although this Court cannot fathom such a situation, if Mr. Ferrell is not relieved of one of his ten year sentences for conspiracy, then Mr. Ferrell's right to pursue the merits of ground three of the Petition is preserved.

## V.   CONCLUSION

Mr. Ferrell's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody is GRANTED in PART and DENIED in PART.[16] Regarding ground one, this Court finds that the state trial court's improper limitation of defense alibi witness Debra Baptista's testimony violated Mr. Ferrell's Sixth Amendment Compulsory Process Clause rights and GRANTS the Petition. Regarding ground two, this Court finds that Mr. Ferrell's due process rights were violated because there was insufficient evidence to support Mr. Ferrell's two

---

[16]   Mr. Ferrell's underlying criminal action in the R.I. Superior Court is P1-1996-1547B. Mr. Ferrell was found not guilty of murder (Count 1). Mr. Ferrell was convicted of two counts of conspiracy (Counts 2 and 4), and he was sentenced to ten years for each conspiracy count. Mr. Ferrell was convicted of assault with intent to murder (Count 3), and sentenced to twenty years on that count. All sentences were to be served consecutively, for a total of forty years.

conspiracy convictions and GRANTS the Petition.[17]   Regarding ground three, Mr. Ferrell's Petition is DENIED AS MOOT due to this Court's ruling on ground two.[18]

This Court has determined that Jason Ferrell "is in custody in violation of the Constitution . . . of the United States." 28 U.S.C. § 2254(a).[19]  It is therefore ORDERED that on or before **March 19, 2013**, the State shall:

1. Vacate ten years from Mr. Ferrell's sentence due to the insufficient evidence to support two conspiracy convictions;

2. Vacate Mr. Ferrell's two conspiracy convictions and vacate his assault with intent to murder conviction as Mr. Ferrell's Compulsory Process Clause rights were violated; and

3. Retry, if it chooses to do so, Mr. Ferrell on, at most, one count of conspiracy and one count of assault with intent to murder.

If the State does not comply on or before **March 19, 2013**, then a Writ of Habeas Corpus shall issue directing Respondent Ashbel T. Wall to release Mr. Ferrell from incarceration.

---

[17]   The State conceded that there was not sufficient evidence to support two conspiracy convictions. (ECF No. 32 at 10.)  After receipt of the State's submission conceding that there was insufficient evidence to support two conspiracy convictions, this Court on December 3, 2012 directed the parties to submit proposals regarding the appropriate remedy.  This Court reviewed those submissions. (*See* ECF No. 32 at 10; ECF Nos. 36 and 37.)

[18]   In an earlier Memorandum and Order, this Court dismissed grounds four through nine of Mr. Ferrell's Petition. (ECF No. 23.)

[19]   In light of the issuance of this Memorandum and Order, Mr. Ferrell's "Motion for Release Status Pending Decision on [his] Pending 28 U.S.C. § 2254 Petition" (ECF No. 38) is DENIED AS MOOT.

The State is further ORDERED forthwith to serve a copy of this Memorandum and Order containing a conditional grant of a Writ of Habeas Corpus on the R.I. Superior Court Presiding Justice and the R.I. Attorney General.

IT IS SO ORDERED.

John J. McConnell, Jr.
United States District Judge

January 18, 2013